James T. Towe
TOWE & FITZPATRICK, PLLC
619 SW Higgins, Suite O
Missoula, MT 59806
Telephone: (406) 829-1669
Fax No.: (406) 493-0538
jamie@towefitzlaw.com

*Attorney for Plaintiff Craig Matosich*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| CRAIG MATOSICH ) | Cause No.: |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **COMPLAINT AND DEMAND** |
| WRIGHT MEDICAL GROUP, INC.; ) | **FOR JURY TRIAL** |
| WRIGHT MEDICAL TECHNOLOGY, ) | |
| INC.; and DOES 1-10. ) | |
| ) | |
| Defendants. | |

Plaintiff, Craig Matosich, by and through his attorney, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.   Plaintiff Craig Matosich is, and at all relevant times herein, has been a citizen and resident of the City of Missoula, Missoula County, Montana.

2.   Defendant Wright Medical Group, Inc., upon information and belief,

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                  Page 1

is and was at all times relevant to this Complaint a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business located in the State of Tennessee.

3. Defendant Wright Medical Technology, Inc., upon information and belief, is a subsidiary of Wright Medical Group, Inc., and at all times relevant to this Complaint was a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business located in the State of Tennessee.

4. Does 1-10 are other persons or entities, yet to be identified, who may be liable for the damages alleged herein for any reason, including but not limited to their involvement in the design, manufacture, sale, distribution, marketing, inspection or maintenance of the subject hip implant device components.

5. At all times relevant to this Complaint, Defendants were the agents of each other, and in doing the things alleged herein, each Defendant was acting within the course and scope of its agency and was subject to and under the supervision of its co-defendant(s).

6. This Court has personal jurisdiction pursuant to Montana's Long Arm Rule, Mont. R. Civ. P. 4(b), and the Due Process Clause of the U.S. Constitution. Defendants designed, manufactured, produced, made, marketed, distributed and/or

sold the below described products, which were used by Plaintiff. Defendants were at all times relevant herein doing business in and/or having directed its activities at the State of Montana and Missoula County, including advertising, selling, and delivering the products at issue in Missoula County, Montana. Defendants' conduct and connections in Montana are such that it has established sufficient minimum contacts with the State of Montana, should reasonably anticipate being hailed into court in Montana, and maintenance of this suit does not offend traditional notions of fair play and substantial justice.

7.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

8.  Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is proper in this Division pursuant to Local Rules 3.2(b) and 1.2(c)(5) because Missoula County is a proper venue under Montana law, Mont. Code Ann. § 25-2-122(2)(a) and (b), and Missoula County is within the Missoula Division.

## ALLEGATIONS COMMON TO ALL COUNTS

9.  At all times relevant to this Complaint, Defendants were involved in

the design, manufacture, marketing sale, and/or distribution of medical products, including the orthopedic hip implant system and components at issue in this suit.

10.     The hip implant system components at issue in this suit are the Profemur neck and Profemur Z femoral stem, which were implanted in Plaintiff along with a Conserve Head and a Conserve Cup.  All components implanted in Plaintiff were designed, manufactured, marketed and sold by Defendants.  The components were metal on metal.

11.     Upon information and belief, Defendants were able to avoid a lengthy and expensive FDA approval process for the Profemur hip system by representing that they were similar to other hip implant systems that had been used for some time.

12.     There were numerous reports of problems with the Profemur hip replacement system and components at issue here, as well as metal on metal implant components, including prior to the components being implanted into Plaintiff, which included corrosion, fretting, wear, and complete failure of the femoral neck.  Such problems were reported to the United States Food and Drug Administration, the Australian Joint Registry, and joint registries in other countries.  Upon information and belief, there are higher failure rates with the Profemur components at issue here when compared to other hip implant systems.

13. Surgeons from the University of Michigan studied the results of the Profemur line of hip replacements from 2003-2009. The authors reported failure rates of the Profemur line greater than 15%. Bimodular neck fracture was common with the Profemur Z. The authors also noted that the failure rate for the Profemur Z, according to the Australian joint registry, were approaching 11% in the three-to-ten-year window after a hip replacement. *See* "High Risk of Failure with Bimodular Femoral Components in THA," *Clin. Orthop. Relat. Res.* (2016) 474: 146-153.

14. Plaintiff has been a very active person all of his life. He has coached basketball and golf at Sentinel High School, where he is also a math teacher. He has also coached little league baseball. Being active and able to enjoy the outdoors is important to Plaintiff.

15. In 2008, Plaintiff's hip arthritis began to limit his activities. He and Dr. Willstein discussed a hip replacement. Plaintiff was 38 years old at the time. Plaintiff indicated it was important that he be able to return to coaching and his previous activity levels.

16. Defendants advertised and marketed the Profemur components as being particularly well suited for young, active people. Plaintiff was informed that the Profemur system should last 30 years or more.

17.    On October 6, 2008, Dr. Willstein performed a right total hip replacement surgery on Plaintiff using a Profemur neck, Profemur Z femoral stem, Conserve cup and Conserve head.  The surgery went well.  Plaintiff was pain free and back to most activities by January 2009.  Plaintiff did experience some pain in December of 2014.  Shortly thereafter, the pain resolved and Plaintiff continued to do fine with the implant.

18.    On September 4, 2017, Plaintiff was walking across his kitchen when his right leg suddenly gave out.  He started to do the splits going down to the floor.  He was in severe pain and drenched in sweat.  His 11-year old son had to help him and keep him calm because he was going into shock.

19.    The EMTs noted that Plaintiff was "diaphoretic and anxious."  Plaintiff was transported by ambulance to the St. Patrick Hospital emergency room.  X-Rays showed: "Hardware failure fracture at the junction of the femoral stem component with the femoral neck and ball component."  The diagnosis was "mechanical failure right total hip arthroplasty."  The neck of the device had broken in half.

20.    Plaintiff underwent hip revision surgery on September 6, 2017.  Due to the complexity of the situation, Dr. Willstein had to call in his partner, Dr. Allmacher, for the surgery.  Dr. Allmacher is a fellowship trained hip revision

specialist.

21. The Profemur system had to be removed and replaced with implant components from different manufacturers. During surgery, there was considerable difficulty removing the femoral component from the femoral canal. Dr. Allmacher's operative report notes stained synovial tissue consistent with metallosis. The surgery lasted about six hours.

22. Plaintiff continues to have slow progression of improvement following the surgery. He missed work after the revision surgery. He was not able to coach golf this past fall. He continues to have ongoing pain and weakness.

23. As a direct and proximate result of the failure of the Profemur components, Plaintiff has suffered significant harm, including but not limited to physical injury and bodily impairment, mental pain and suffering, inability to engage in his normal activities, surgery, medical bills, loss of earnings, future medical expenses and other special and general damages as allowed by law.

## CLAIMS FOR RELIEF

## COUNT I- STRICT PRODUCT LIABILITY

24. Plaintiff hereby incorporates all other paragraphs of this Complaint as though fully set forth herein.

25. Defendants intended the Profemur components at issue, which were

designed, manufactured, produced, assembled, made, marketed, distributed and/or sold by them, to be used as a hip replacement system.

26. The Profemur system and components at issue here were defective, unreasonably dangerous and unsafe for their intended purpose at the time they left the possession of Defendants. The components reached Plaintiff, a user or consumer, without substantial change in the condition in which they were sold.

27. The Profemur hip replacement system and components were defective, unreasonably dangerous and unsafe for their intended purpose due to their design, manufacture and/or Defendants' failure to warn of dangers that would not be readily recognized by the ordinary user. Due to such defects, the devices were unsafe and unfit for their intended use.

28. The Profemur hip replacement system and components failed to perform as safely as ordinary patients and medical professionals would expect. After recovery from surgery and regular use for the intended purpose, the Profemur hip replacement system implanted in Plaintiff suffered a complete and catastrophic failure, with the neck breaking in half, requiring a revision surgery.

29. Defendants put into the stream of commerce devices which were defective and in an unreasonably dangerous condition for their intended or foreseeable use.

30. The Profemur components were also in a defective condition because Defendants failed to adequately warn patients and medical professionals of the existing dangers associated with their implantation and problems thereafter.

31. Plaintiff used the Profemur components for their intended purpose.

32. The defective nature of the devices caused injury and damages to Plaintiff, including past and future physical and mental pain and suffering, surgery, lost earnings and loss of earning capacity, medical expenses, the inability to enjoy regular activities, and other recoverable damages.

## COUNT II- FAILURE TO WARN

33. Plaintiff hereby incorporates all other paragraphs of this Complaint as though fully set forth herein.

34. On information and belief, Defendants knew or should have known that the devices at issue were defective and unreasonably dangerous when being used for their intended purpose.

35. On information and belief, Defendants knew or should have known that the devices at issue could fail, and that use of the products involved a danger for which Defendants were required to warn consumers. There were reports of early failure of the Profemur components which were greater than the failure rate of other implant devices. Defendants further knew or should have known of the

risks associated with metal on metal devices, including but not limited to early wear, corrosion, and failure as well as release of metal ions and particles into the bloodstream and metallosis.

36. Defendants had a duty to warn users and consumers of the dangerous condition of the devices because the dangers were such that they are not generally known or which a purchaser or user would not reasonably expect to find in such devices.

37. If Plaintiff had been adequately warned of the risks related to implantation of the Profemur components, including the risk of catastrophic and complete device failure, he would not have consented to implantation of Defendants' Profemur hip replacement system.

38. Defendants failed to provide an adequate warnings to Plaintiff at any time, including after they were aware of ongoing failures of its Profemur hip replacement system.

39. As a result of Defendants' failure to warn, the devices continued to be implanted in patients such as Plaintiff, with their sudden failure without warning causing injuries and losses.

40. Defendants' breaches of their duty to warn caused injuries and losses to Plaintiff as alleged herein.

## COUNT III- BREACH OF WARRANTY

41. Plaintiff hereby incorporates all other paragraphs of this Complaint as though fully set forth herein.

42. Prior to the time that Plaintiff used the Profemur hip implant components for their intended purpose, Defendants expressly and impliedly warranted to Plaintiff that the products were of merchantable quality and reasonably fit and safe for their ordinary use and intended purpose.

43. At the time of contracting for the sale and the retail sale of the subject Profemur components, Defendants knew or should have known the particular purpose for which the goods were required and that Plaintiff and other consumers were relying upon Defendants' skill and judgment to provide suitable goods.

44. In a reasonable and foreseeable manner, Plaintiff relied on Defendants' express and implied representations and warranties in consenting to hip replacement surgery with Defendants' devices.

45. Defendants breached their express and implied representations and warranties regarding the safety and merchantability and fitness for a particular purpose of their devices.

46. The subject devices were not safe, not fit for their intended use, nor of merchantable quality as warranted by Defendants.

47. On information and belief, Defendants knew or had reason to know that the subject devices were not safe, not fit for their intended use, nor of merchantable quality as warranted by Defendants.

48. On information and belief, Defendants' knowledge included, but was not limited to, that there had been reports of early failures related to the Profemur hip implant components, that the Profemur components suffered early fretting, corrosion, and complete failure at a higher rate than other devices; and knowledge that metal on metal devices were prone to early wear, corrosion and failure.

49. As a proximate result of Defendants' breach of warranties, Plaintiff has suffered injuries, losses, and damages recoverable herein.

## COUNT IV- CONSUMER PROTECTION ACT

50. Plaintiff hereby incorporates all other paragraphs of this Complaint as though fully set forth herein.

51. At all times relevant to this action, the Montana Consumer Protection Act, Mont. Code Ann. §§ 30-14-101 *et seq.* was in effect and expressly precluded as unlawful the "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103.

52. An unfair act or practice includes one that offends public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially

injurious to consumers.

53. Plaintiff purchased the Profemur hip component parts for personal use.

54. Defendants marketed, distributed, and sold the Profemur hip replacement system in the State of Montana. These acts constitute acts of trade or commerce in the State of Montana.

55. Upon information and belief, the Defendants' unfair or deceptive acts or practices include, but are not limited to, fraudulent concealment and knowing and false representations of material facts to consumers. They further include the failure to timely alert consumers of the problems and risks which were or should have been discovered regarding the Defendants' hip implant systems. Defendants' deceptive and unfair acts were made for the purpose of procuring and promoting the sale of the Profemur system and other similar components.

56. On information and belief, Defendants allowed their defective and unreasonably dangerous hip implant components to be implanted despite substantial indications they could fail, necessitating additional surgeries and interventions.

57. Upon information and belief, Defendants misled and misrepresented the efficacy and reliability of the devices.

58. Upon information and belief, Defendants failed to take steps to warn patients or healthcare professionals about the risk of failure of such devices.

59. Upon information and belief, Defendants representations, omissions and practices were likely to mislead healthcare professionals and the average patient/consumer and, in fact, misled Plaintiff and his doctor, including into believing that Defendants' devices at issue were safe and reliable for implantation.

60. Defendants' conduct constituted an unfair and deceptive practice in the conduct of its business.

61. As a result of Defendants' unfair and deceptive trade practices, Plaintiff suffered actual damages as set forth herein for which he is entitled to compensation under the Consumer Protection Act, including treble damages, attorney fees, and costs. Mont. Code Ann. § 30-14-133.

## COUNT V- NEGLIGENCE

62. Plaintiff hereby incorporates all other paragraphs of this Complaint as though fully set forth herein.

63. Defendants had a duty to exercise reasonable care in the design, manufacture, testing, marketing, sale and distribution into the stream of commerce of the Profemur hip implant system and component parts, including a duty to ensure that the device did not pose a significantly increased risk of adverse events.

64. Defendants failed to exercise reasonable care in the design, manufacture, testing, marketing, sale and distribution into the stream of commerce, and failed to adequately and timely warn physicians and patients regarding the risks and dangers associated with the Profemur device and component parts.

65. Despite the fact that Defendants knew or should have known of adverse risks, such as early failure and the disintegrations of its hip replacement system components, Defendants continued to manufacture, market, sell and distribute the Profemur and other similar components as a safe and effective hip replacement system.

66. As a direct and proximate result of Defendants' negligence in the design, manufacture, marketing, selling and distribution of the hip components, Plaintiff has suffered and will suffer damages, including, but not limited to, physical injury and bodily impairment, lack of mobility, pain and suffering, significant medical bills, loss of earnings, altered way of life and lifestyle, future and special medical damages, and other special and general damages.

## PUNITIVE DAMAGES

67. Plaintiff hereby incorporates all other paragraphs of this Complaint as though fully set forth herein.

68. Defendants' conduct, as described herein, constitutes actual fraud and

actual malice as defined in Mont. Code Ann. § 27-1-221.

69. Defendants' conduct was performed in conscious and intentional disregard of, and indifference to, the high probability of injury to patients, including Plaintiff. Defendants have engaged in a pattern of concealing safety hazards despite a high risk of injury and damage to Plaintiff and other users of Defendants' Profemur hip implant system and components.

70. Defendants' conduct as alleged herein and to be proven at trial demonstrates a complete and reckless disregard for the safety, health and well-being of Plaintiff and other patients so as to warrant imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Matosich requests:

1. All damages for past and future medical expenses, lost wages, economic loss, pain and suffering, emotional distress, loss of earning capacity and other general and special damages to the full extent allowed by law;

2. For treble actual damages, costs and attorneys' fees pursuant to Mont. Code Ann. § 30-14-133;

3. Punitive damages;

4. Such other relief as permitted by law or deemed just and equitable by the Court.

## JURY DEMAND

Plaintiff requests a jury trial on all matters appropriately tried to a jury.

Dated this 22nd day of January, 2019.

/s/ James T. Towe
TOWE & FITZPATRICK, PLLC

*Attorney for Plaintiff Craig Matosich*
